Honorable Ken Jacobsen State Senator, 46th District P.O. Box 40446 Olympia, WA 98504-0446
Honorable Dan Swecker State Senator, 20th District P.O. Box 40420 Olympia, WA 98504-0420
Honorable Jay Rodne State Representative, 5th District P.O. Box 40600 Olympia, WA 98504-0600
Dear Senators Jacobsen and Swecker and Representative Rodne:
By letters previously acknowledged, you have asked for an opinion on several questions related to special assessments for conservation districts under RCW 89.08.400.[1] We have rephrased your questions as follows:
 [original page 2] 1) Does a county legislative body have the authority to modify a conservation district's proposed budget or intended allocation of special assessment funds?
 2) Is the county legislative body's authority to "modify and accept" a proposed system of assessments limited to changes to: (1) the methodology used to classify lands that will receive a special benefit from activities of the conservation district, (2) the amount of the assessments to be levied against the parcels of real property, and (3) the duration of the assessments?
 3) If a county legislative body is entitled to make changes, what obligation, if any, does a conservation district have to accept changes made by a county legislative authority to a proposed system of assessments?
 4) What options and obligations does a conservation district have if it does not agree with the final system of assessments imposed by a county legislative body?
 5) May a conservation district elect to withdraw and/or modify its proposed system of assessments at any time before a county legislative body takes final action modifying and accepting the proposed system of assessments?
 6) Does RCW 89.08.400(4) require that all collected conservation district special assessments, except for an amount covering costs incurred by the county assessor and county treasurer in spreading and collecting the assessments, not exceeding actual costs, be transferred to the conservation district for use by the district for statutorily-authorized purposes?
We respectfully decline to answer an additional question you posed, which asked whether the distribution and use of funds generated from the $10 per parcel special assessment established in 2006 by King County is consistent with the provisions of RCW89.08.400. When requested by legislators, the purpose of an Attorney General Opinion is to assist them in assessing the need for amendatory legislation. Opinions are not intended to resolve specific factual situations or disputes and, for that reason, we decline in this opinion to address a specific dispute we understand may exist in King County. Therefore, this opinion should not be construed as a comment on the validity of the action taken by any particular county or district. We trust, however, that this opinion will provide sufficient guidance to you as to the potential need for new or clarifying legislation, and to counties and conservation districts regarding the meaning of current law.
 [original page 3] BRIEF ANSWER
In response to questions one and two, the county legislative body has no authority to modify a conservation district's proposed budget or expenditures. In other words, the county legislative body's authority to modify the district's proposal is limited to the district's proposed system of assessments, which includes 1) the methodology used to classify lands; 2) the per parcel assessment; 3) the total amount of assessments per land classification; and 4) the duration of the assessment.
In response to your third and fourth questions, if the county legislative body modifies the system of assessments, the district must use the system approved by the county legislative body. If the district disagrees with the county-approved system, the district may seek in a future year a more favorable system of assessments through the filing and public hearing process prescribed by statute.
In answer to your fifth question, a conservation district may withdraw or modify its proposal before the county acts on it under certain circumstances described in our response below.
The answer to question 6 is yes — conservation district special assessments are statutorily earmarked for use by the district.
 ANALYSIS
Conservation districts are governmental subdivisions of the state. RCW 89.08.020, .220. Conservation districts are created by petition and election and are governed by three elected supervisors. RCW 89.08.080-.170, .190. The board of supervisors has a variety of powers related to the conservation of renewable resources within the boundaries of the conservation district. RCW89.08.220. For example, conservation districts may carry out works of improvement designed to conserve or protect natural resources on land within the district in cooperation with private landowners and local governments. RCW 89.08.220(3), (4). Conservation district boards have the authority to hire staff, acquire property, and make contracts on behalf of the district. RCW 89.08.210, .220(5), .220(10).
Your questions relate to special assessments on parcels of land located within conservation district boundaries. These assessments are one of the funding sources for carrying out conservation projects available to conservation districts.[2]
These special assessments are imposed pursuant to the process set forth in RCW 89.08.400. The process requires the conservation district's supervisors to hold a public hearing on a proposed system of assessments. The supervisors are thereafter required to file the proposed system of assessments and a proposed district budget for the succeeding year with a county legislative body. Specifically, RCW 89.08.400 provides, in part:
 [original page 4] (2) On or before the first day of August in that year, the supervisors of a conservation district shall file the proposed system of assessments, indicating the years during which it is proposed that the special assessments shall be imposed, and a proposed budget for the succeeding year with the county legislative authority of the county within which the conservation district is located. The county legislative authority shall hold a public hearing on the proposed system of assessments. After the hearing, the county legislative authority may accept, or modify and accept, the proposed system of assessments, including the number of years during which the special assessments shall be imposed, if it finds that both the public interest will be served by the imposition of the special assessments and that the special assessments to be imposed on any land will not exceed the special benefit that the land receives or will receive from the activities of the conservation district. The findings of the county legislative authority shall be final and conclusive. . . .
 (3) A system of assessments shall classify lands in the conservation district into suitable classifications according to benefits conferred or to be conferred by the activities of the conservation district, determine an annual per acre rate of assessment for each classification of land, and indicate the total amount of special assessments proposed to be obtained from each classification of lands. Lands deemed not to receive benefit from the activities of the conservation district shall be placed into a separate classification and shall not be subject to the special assessments. An annual assessment rate shall be stated as either uniform annual per acre amount, or an annual flat rate per parcel plus a uniform annual rate per acre amount, for each classification of land. . . .
We now turn to your questions and answer them in light of the above statutory background.
 1) Does a county legislative body have the authority to modify a conservation district's proposed budget or intended allocation of special assessment funds?
 2) Is the county legislative body's authority to "modify and accept" a proposed system of assessments limited to changes to: (1) the methodology used to classify lands that will receive a special benefit from activities of the conservation district, (2) the amount of the assessments to be levied against the parcels of real property, and (3) the duration of the assessments?
The focus of your first two questions is the scope of the county's authority to modify the proposal a conservation district has filed with the county legislative body. The district must file two items with the county legislative body — the proposed system of assessments and the district's proposed budget. RCW89.08.400(2) then goes on to state that the county "legislative authority may accept, or modify and accept, the proposed systemof assessments". Emphasis [original page 5] added. As a prerequisite to imposing assessments, the statute expressly requires county acceptance of the system of assessments, but not of the district's proposed budget.
Next, we turn to the meaning of the phrase "system of assessments", which is described in subsection (3) of RCW89.08.400. To paraphrase subsection (3), a system of assessments is a classification of lands according to benefits conferred by the conservation district; an annual rate of assessment for each land classification; and a total amount of assessments that will be collected from each land classification. In addition, subsection (2) indicates that the duration of the assessment is also part of the "system of assessments".[3] Nothing in the definition of "system of assessments" relates to the conservation district's proposed expenditures of the money the district collects from the assessment. The "system of assessments" is therefore different than the district's proposed budget.
Although the district must file its proposed budget with the county, the statute does not grant the county legislative body the authority to modify the district's proposed budget or expenditures. The apparent purpose served by the budget filing requirement is therefore to assist the county when it reviews the proposed system of assessments. Specifically, the county's review of the proposed assessments includes an analysis of whether the assessments serve the public interest or exceed the benefits the land will receive from the district's activities. The county would of course need information about the district's activities and intended expenditures in order to conduct such an analysis. However, nothing in RCW 89.08.400 grants the county the authority to modify the district's budget. Indeed, the county is expressly required to transfer the assessment revenues to the conservation district for use by the district. RCW 89.08.400(4).
Therefore, in answer to your first two questions, the county legislative body has no authority to modify the district's proposed budget. To use the terminology of your letter, the county has no authority to modify the district's intended allocation of special assessment funds.
Our answer is consistent with the fact that conservation districts are distinct governmental subdivisions of the state with their own enumerated powers. For example, each conservation district is required to develop a long-term comprehensive program and annual work plans. These are prepared after public input and serve as the "authorized program of the district". RCW89.08.220(7). Counties are subdivisions of the state separate and distinct from conservation districts located within county boundaries. County authority related to conservation districts does not extend any further than expressly stated in applicable statutes. For example, conservation districts may invite representatives of counties or other local governments to "advise and consult" with the board on program and policy. RCW 89.08.210. However, there is no provision in the statutes that grants the county legislative body any power over a conservation district's budget, or any general supervisory authority over the financial affairs of a conservation district.
[original page 6] As we understand it, some conservation districts may take the approach set forth in the following example. A conservation district submits to a county a system of assessments that specifies a $10 total assessment that contains two parts — a $4 per parcel assessment for Activity A and a $6 per parcel assessment for Activity B. It is difficult to apply the interpretation of RCW 89.08.400 set forth above to these circumstances. For example, in response to this submission, a county could modify the district's proposal and approve a revised system of assessments that authorizes an assessment of $2 for Activity A and $8 for Activity B. On the one hand, the county has no authority to modify the proposed budget and thus could not revise the district's policy judgment as to how much to allocate to Activity A and how much to Activity B. On the other hand, the county does have authority to revise the "system of assessments", which could include the specific amount to assess against each parcel. This problem could be avoided by formatting the district's proposal in such a way that the actual budget can be separated from the "system of assessments".
We can comment on this example in two respects. First, RCW89.08.400(2) requires that the county legislative body hold a hearing on "the proposed system of assessments". This is a reference to the district's proposal. The county must therefore hold a hearing on the district's proposal and determine whether it serves the public interest and whether assessments will exceed the benefits the land will receive from the district, as those benefits are described in the district's proposed budget. The county does not comply with RCW 89.08.400(2) if the county holds a hearing only on the county's proposal and conducts no hearing on the district's proposal.
Our second comment is that if the county approves an $8 per parcel assessment for Activity B, that means the county has determined that Activity B serves a public purpose and that the benefit to the assessed land for Activity B is at least $8 per parcel. If Activity B confers an $8 per parcel benefit, the district's proposal of $6 per parcel also meets RCW 89.08.400's threshold for approval; yet the county did not accept the district's proposal even though it met the statutory threshold. This example shows how a county could modify the district's proposal to require the district's assessments to fund programs favored by the county, even if that overrides the funding priorities of the district. This does not appear to be what the Legislature contemplated when it granted assessment authority to conservation districts. The expressed legislative purpose of the county's power to modify the district's proposal is to ensure that an elected body different than the district board reviews the assessments for public interest and proportionality reasons. RCW 89.08.400(2). There is no indication in the statute that the conservation district assessments were intended to provide a county with the authority to raise revenue to fund programs favored by the county in contrast to those determined by the district.[4]
 3) If a county legislative body is entitled to make changes, what obligation, if any, does a conservation district have to accept changes made by a county legislative authority to a proposed system of assessments?
 [original page 7] 4) What options and obligations does a conservation district have if it does not agree with the final system of assessments imposed by a county legislative body?
We reiterate that the county's power to modify a conservations district's proposal applies only to the proposed system of assessments and does not apply to a conservation district's proposed budget. Our answers to questions 3 and 4 are therefore limited to county-imposed changes to the land classification, the annual assessment rate, the total amount of assessments per classification, and the duration of the assessment.[5]
We will answer your question using the following examples. One example of a change that a county legislative body could potentially make is to modify the rate of assessment. One part of the county's analysis under RCW 89.08.400(2) is to consider whether the assessments will exceed the special benefit that the land will receive. A county might conclude that a proposed $10 per parcel assessment is too high. Instead, the county might determine that the benefit to be received by each parcel from the district is more fairly valued at $5 per parcel and modify the assessment accordingly. In such a situation, the law requires the conservation district to impose a $5 special assessment, since the law clearly confers on the county legislative body the power to modify the district's proposed assessment rate prior to accepting it. A district would not have the option of imposing the higher $10 rate in this situation.
A second example relates to the duration of the assessment. If a district requests that the special assessment be approved for a ten-year period, the county legislative body could decide to modify that request and approve only a three-year period. In such a case, the conservation district's special assessment would expire after three years. The district would be required to file with the county a new proposed system of assessments, followed by the county's public hearing process, in order to continue to impose special assessments beyond the three-year period.
As we view it, the conservation district has only two options if it does not agree with the county's modification. First, the district could impose the county approved assessments in the ensuing year, file a new proposal with the county by August 1 of the following year, and attempt to persuade the county to accept its new proposal in the course of the public hearing and deliberative process prescribed in RCW 89.08.400(2). Second, the district could decline to impose any assessment.
 [original page 8] 5) May a conservation district elect to withdraw and/or modify its proposed system of assessments at any time before a county legislative body takes final action modifying and accepting the proposed system of assessments?
We have rephrased your question as best we can and answer it as follows.[6]
If the district withdraws its proposal, there would be nothing for the county to consider or approve. We conclude that the district may withdraw its proposal, but then there would be no basis for the county to approve an assessment for the district to collect.
Withdrawal of the proposal could have consequences under the following sentences of RCW 89.08.400(2):
 The supervisors of a conservation district shall hold a public hearing on a proposed system of assessments prior to the first day of August in the year prior to which it is proposed that the initial special assessments be collected. At that public hearing, the supervisors shall gather information and shall alter the proposed system of assessments when appropriate, including the number of years during which it is proposed that the special assessments be imposed.
 On or before the first day of August in that year, the supervisors of a conservation district shall file the proposed system of assessments . . . with the county legislative authority. . . . The county legislative authority shall hold a public hearing on the proposed system of assessments.
It seems clear that the district may withdraw or modify its proposal before the county legislative body has acted on it or proposed a different assessment system, so long as a substituted proposal is submitted within the statutory time requirements. Assuming that the district submitted Proposal A and then (before the county had taken any action and before the deadline set forth in statute) withdrew it and submitted Proposal B, the county would not have authority to ignore Proposal B and act on Proposal A instead.
If the district withdraws and modifies its proposal after August 1, questions may arise regarding whether the district has complied with the statutory public hearing process. As we see it, the answers to such questions would depend on the specific circumstances, and there would be two matters to consider. The first is whether the district's modified proposal differs in a material respect from the original proposal, because the property owners who will be assessed should have a reasonable opportunity to provide their comments to the district on the proposed system of assessments. The second consideration would be whether the withdrawal prejudices the county's ability to meet its own statutory obligation to conduct a hearing and deliberate on the proposal.
[original page 9] Finally, we point out that it is not necessary for the district to modify its proposal. The county's authority to modify the district's proposal is sufficient to authorize the system of assessments ultimately approved by the county.
 6) Does RCW 89.08.400(4) require that all collected conservation district special assessments, except for an amount covering costs incurred by the county assessor and county treasurer in spreading and collecting the assessments, not exceeding actual costs, be transferred to the conservation district for use by the district for statutorily-authorized purposes?
 RCW 89.08.400(4) states in part:
 The county treasurer shall deduct an amount from the collected special assessments, as established by the county legislative authority, to cover the costs incurred by the county assessor and county treasurer in spreading and collecting the special assessments, but not to exceed the actual costs of such work. All remaining funds collected under this section shall be transferred to the conservation district and used by the conservation district in accordance with this section.
RCW 89.08.400(4). The answer to question 6 is yes. The statute is explicit on this point and requires no further discussion.
We trust this opinion will be of assistance to you.
Sincerely,
 ROB McKENNA Attorney General
 JEAN M. WILKINSON Senior Counsel
[1] We received one opinion request sent jointly by Senator Jacobsen and Senator Swecker, and a second opinion request from Representative Rodne. Because all of the questions relate to the same subject, we have combined them into a single opinion.
[2] Another source of funding to conservation districts are grants awarded by the state conservation commission. RCW89.08.410.
[3] RCW 89.08.400(2) states in part that "[a]fter the hearing, the county legislative authority may accept, or modify and accept, the proposed system of assessments, including the numberof years during which the special assessments shall be imposed". (Emphasis added.)
[4] One option available, of course, is for the district and the county to consult with one another to determine if it is possible to reach agreement about the district's budget priorities.
[5] Based on how you phrased question 3, we assume you are asking only about modifications to a system of assessments.
What if a county modifies something that is not an element of a system of assessments? For example, a district submits to a county a proposed system of assessments that includes land classifications, a $5 annual per parcel rate, and a three-year duration. The district also provides the county with a separate document — the district's proposed budget for the next calendar year. The county then holds a hearing and enacts a resolution that accepts the land classifications, the $5 rate, and a three-year duration, but it also directs the district to spend the assessment in a manner that is different than the district's proposed budget. Because the county has no authority to modify the district's proposed budget, the part of the resolution that purports to modify the district's planned expenditures is not binding on the district.
[6] The rephrased question is perhaps broader than what you intended. We trust that by answering this broad question, our answer will provide you with the guidance you seek with respect to any specific question you have.